Good morning your honors. Todd Welty on behalf of the Schaefflers. May it please the court The issues before the court is simply one of jurisdiction and that turns on whether the Schaefflers claim for refund was timely. There is no dispute in this case that for the 2002 tax year the Schaefflers overpaid their tax liability by a little more than 5 million dollars. The only question is whether the refund claim is timely. Either under the 3 year general period, 3 years from when the original return was filed, 2 years from when it was paid, or 10 years under the special rule for refund claims related to changes in foreign tax credits. Those are the only issues. Timely or not timely. Starting with one of the key authorities will help explain why Schaeffler believes that it satisfied both the 2 year rule as well as the 10 year rule for claims attributable to foreign tax credits. And that case is Kingston. The Court of Federal Claims case which underlies many of the rulings in this going essentially to the issue of when a credit is treated as a payment of taxes. And that is cited both by the District Court as one of the key authorities disagreeing with Dresser, another District Court of Opinion coming out of the Northern District. But it's also cited by the 5th Circuit and Republic and other cases. So it's one of the foundational authorities. And that side is 177, Court of Claims 471 or 368 F. Second 281 just for ease of reference. In Kingston, the taxpayer in that case was subject to income tax and excess war profits tax, the Korean war profits tax. In that case, under the renegotiation act associated with the Korean war, essentially if prices charged by a government contractor were later deemed too high, that contractor had to repay the government on lower renegotiated prices. But in the interim, that taxpayer may have actually paid tax on those excess profits. And so it set up an interesting question that the court faced. And ultimately, upon repayment of excess profits to the government, the taxpayer claimed a refund. But how this came about is really critical. And it really sets the stage for understanding Kingston, the two-year payment rule, and ultimately the alternative minimum tax and how it's different and why it's distinguishable from those cases. Again, in Kingston, war profits were subject to renegotiation at a later date. The taxpayer there reported and paid war profits in 1953. In 1957, those prices charged to the government were renegotiated. And Kingston made a payment to the government for the excess prices. Instead of doing what it was legally entitled to do, reducing the payment in 1957 by the amount of taxes paid in 1953, they paid the full amount. They didn't take any reduction for the taxes they had paid. And then later, they filed a claim for a refund asking for those taxes on that repayment back. Refund claim in 1957, taxes paid 1953, you're beyond the normal three-year rule. And the question was, is it timely? And it's important that the court in that case, at the outset, thought it was critical to make a very important distinction. It said, it will be noted at the outset that the Korean excess profits tax, which is involved in that case, was not a separate tax from the income tax. You should be thinking, at this point, alternative minimum tax, which is involved in our case, a separate alternative tax system. Likewise, when the taxpayer in Kingston repaid the excess prices to the government in 1957, the Court of Federal Claims went out of its way to say that repayment did not create a credit, a tax credit, for the taxpayer. Again, that's at pages 286 to 287. So it said, and along the way, it said, and dropped a footnote, this is different than the World War II excess profits tax, which was separately, a separate taxing system. Again, we'll tie that to the alternative minimum tax as we move forward. Okay, you lost five minutes now. I know Kingston's important. Yes. Am I oversimplifying to say your basic proposition is that when you have a credit that's carried forward to offset, that, in your mind, is a refundable payment? Is that the proposition you're extracting from Kingston? It's refundable. These credits are refundable. Credit is treated as a payment. It's refundable. There's a lot of art in the tax code called a refundable tax credit, like an earned income tax credit where you actually don't pay anything. We're not saying here that the alternative minimum tax, and hence the minimum tax credit carried forward, is what is thought of as a refundable tax credit. But if the alternative minimum tax isn't listed under 6401, I mean, I appreciate you setting up this paradigm, but don't you lose on both issues then if it's not a payment? It is a payment. I know, but if it's not, they've asserted this as an answer to the 6511A. I don't see why, if you were wrong as to a payment, it wouldn't also mean the government would prevail on 6511D. No, 6401 does not change the basic character of the alternative minimum tax and the minimum tax credit. Let me explain why. Let me just explain why. In 1986, when Congress enacted the current form of the alternative minimum tax, it did two things. It created the minimum tax credit, and it also created a system where you have a regular income tax and you have an alternative minimum tax. You spelled this out in the brief. That system essentially says that there are certain timing issues that take a depreciation, accelerated depreciation, incentive stock options, things that don't create – either reduce or don't create ordinary income tax. Under the alternative minimum tax, they do. There's a timing question because the regular income tax reverses over time, and the minimum tax is a minimum tax. It's not designed to increase your normal income tax liability. Effectively, the minimum tax credit represents the timing, the overpayments, the prepayments of the ordinary income tax. So they are actually payments of ordinary income tax that under 7422, when allowed, are deemed payments. I think I'm understanding. I guess I'll tell you my difficulty with your brief is that unless these two connect, sort of nine-tenths of the brief was devoted to your Woods argument and defining what's attributable to. This is the last two pages, as I understand it. But is this your principal argument, the 6511 credit equals payment, or are you also arguing that the foreign tax credits caused the overpayment? Yes, Your Honor. We are not abandoning the Woods argument at all. That's nine-tenths of your brief. I'm just trying to – or from an explanatory purpose to say we satisfy both. The minimum tax credit represents a prepayment or overpayment of regular income tax as a separate system and under 7422, when allowed, is deemed a payment. You fall within that. Woods, it's important to understand how the minimum tax credit works. Effectively, in the alternative minimum tax, effectively, if your regular income tax is too low and your minimum tax is higher, you pay the minimum tax. To the extent that that difference is due to timing issues, it gives rise – the payment of the alternative minimum tax gives rise to the minimum tax credit carry-forward, which can be carried forward indefinitely. By statute, it goes forward forever. In our case, in 2002, the district court said, ah, you have these foreign tax credit adjustments. They would have simply increased your tax liability, your regular income tax. What happens under the minimum tax credit system? Your income tax – regular income tax liability goes up. Computationally, it allows you to take that credit. So we believe, as in Woods, where the court drew a direct line from the sham partnership argument to there's no outside basis to the gross valuation misstatement penalty applies because outside basis is overstated by 400% or more. So you have this direct line of causation. Prior to the Supreme Court decision in Woods, this court stopped sham transaction. You don't go to those next steps. You don't go to outside – how do you compute outside basis? Is there outside basis? Is that outside basis overstated by 400% or more? You just stop the inquiry. All we're saying is here, there is likewise a direct line of causation. The foreign tax credit adjustments increase taxable income. That creates – reverses the timing issue allowing for the utilization of the minimum tax credit. It is the direct line of causation similar in to Woods where you go from sham to outside basis to the computational question of outside basis overstated by 400% or more. Here we go from foreign tax credit adjustments impact irregular income tax liability, increasing it. It impacted through 905. Through 905 and actually section 59. But wouldn't it be true that that AMT carry forward existed by virtue of the 2001 tax that you filed an amendment to in 2012? You had that credit a year before the foreign tax credit even kicked in or impacted at all. Yes, that timing – there was an additional timing difference. And the government calls it a redistribution between – But I'm just asking you how could it cause directly if before it even existed you already had that credit? Because it's actually the increase in taxable income in 2002 associated with the foreign tax credit adjustments that allows you to even take it. That allows you to do the computation. Right. So that is the nub of your disagreement. They're saying that's just a reporting requirement. It's a computational moment. But it didn't actually in any way cause the overpayment. What caused the overpayment was the entirely separate fact of the AMT carry forward you already had by virtue at 2012, 2011. That's their argument versus yours, I think. Yes, essentially, Your Honor. We're saying the chain of causation doesn't start with the change into the ordinary tax liability, which is essentially what the district court did. They said, oh, your ordinary tax liability would have gone up. No, that caused a series of issues that allowed for the taking of the minimum tax credit. In cases like Electrolux, you say those are no longer good law because of Woods? They're just distinguishable in that they don't take into account Woods. Look further at the chain of causation. And more importantly, there you had just simply a single question of whether a carry back term used in the language also encompassed a carry forward. The taxpayer said that language encompassed a carry forward. The question that arises under Woods, would that result be different? Because the carry back, then the next step is what happens to the carry forward. So you could see how Woods would change that analysis. It's unclear. We think it's distinguishable because clearly there the taxpayers were trying to read words into the statute that weren't there. But the analysis very well may have been different under Woods. Okay. You have reserved your rebuttal. Thank you. Ms. Bringer? Good morning. May it please the court, my name is Nora Bringer and I represent the United States in this appeal. To maintain a more workable tax enforcement system, the Supreme Court explained in Brockamp, Congress has imposed unusually emphatic time limitations for filing a claim for refund. The normal time limit for a refund claim under 6511A expired in this case in October 2006. The Shufflers filed their original return in October 2003 and the normal deadline under 6511A expired in October 2006. But they filed the refund claim at issue here in April 2013, six and a half years after that deadline. They principally assert that their refund claim is timely under the exception in 6511D3. But that exception requires that the overpayment of tax is attributable to foreign taxes for which the foreign tax credit is allowed. And there's no dispute here that attributable to connotes causation. It's in line with this court's decision in Stanford and the Supreme Court's decision in Braunstein. But as the district court found, the overpayment at issue here was not caused by foreign taxes. The changes in foreign taxes reported on the amended return at issue here reduced the overpayment by $1.6 million. And something that reduces the overpayment cannot be said to have caused the overpayment. That's just sort of conceptual, though, because they didn't do anything wrong. They reported as they're required to under 905 when they could. So under your theory, would it be impossible for them to reap the benefit of their AMT credit? Well, Your Honor, yes, you're right. They complied with 905C1 and reported the changes in their foreign tax. 905C3 says that where there's an overpayment claimed following a redetermination of 905C1, that any refunds must comply with Section 6511. So Congress knew that there was a perpetual obligation to report these changes in foreign tax. And the reason for that is that the code allows taxpayers who choose to do this to claim the foreign tax credit in the year in which those taxes accrue, knowing full well that those taxes might actually be determined at a later date. So here the shufflers took a bigger foreign tax credit than it turned out they were entitled to. And so Congress reasonably says you must report those changes down the road whenever they happen. But if you're claiming a refund in that redetermination reported under 905C1, it must comply with 6511. So no, they didn't do anything wrong here. They didn't do anything wrong, and they have lost the benefit of the credit carryover, which was also legitimate and existed. Well, they did benefit somewhat from it. Without the minimum tax credit here, they would have owed $1.6 million. So they did benefit from it. But you're correct in that they filed a refund claim too late to benefit from the $5.1 million remaining. And what's your broad answer to their statement that Woods has adjusted and loosened the concept of attributable to to mean anything triggering, instigating? So a 905 redetermination is the but-for trigger. So that's not Woods. Woods dealt with two elements of a complicated tax shelter that the Supreme Court found were inextricably intertwined, in a sense two sides of the same coin. Woods was not about cascading causation. In fact, the Supreme Court, toward the end of that opinion, specifically says that they are not dealing with a situation described in the blue book, which was at issue in that case. It's a congressional document. Talk up just a little. Sure. So the Supreme Court specifically says in the end of Woods that they were not dealing with two separate causes of an underpayment. It was the issue in that case. Here there are two separate causes of two separate things that they changed on their amended return that led to this claimed overpayment of $5.1 million. There's nothing inextricably intertwined about what occurred here. So Woods simply doesn't speak to this argument of a cascading series of causes. What's the best case, district or circuit, that emphasizes that attributable to really means interlocked as opposed to separate and independent? Is there one? I think the best case that talks about that inextricably intertwined idea has to be Woods. Okay. But other courts that have addressed this cascading type argument have rejected it. Now here the district court… The rule for you, would we have to say 905 is pretty much just a reporting requirement? It is not causal in any sense that matters? Well, 905 I think itself makes that clear because… It says… It says that the refund claims must qualify under 6511. And I don't mean to ask too many questions because your outline is probably more important than mine. But I understood opposing counsel, do you agree to start with an entirely different approach to this, which is in my mind the much harder to understand approach? So if you could get to it, that would help, which is are these credits not payments under Kingston or especially with reference to 7422? And as you answer that, if you were to prevail, am I right thinking that that argument would have been successful against the 6511D argument as well as where you urged it as to A? Do you understand? I'm not sure I understand your second. If these offsetting credits don't count as payments, and I'm simplifying it, that would be a response to both provisions. They wouldn't be entitled to a refund under either. But as I read your brief, you only urged that as to the 6511A argument. I'll see if I can… Yes, just explain the terrain. So I'll move to the 6511A argument, which was very much the alternative argument in their briefs, but of course a principle argument made today. As an initial matter, any tax paid for 2001 is irrelevant to the 6511A analysis for 2002, which is the year at issue here. Whether or not tax was paid for 2001 doesn't really matter for 2002. And I'll walk through a few parts of that. First, there's a little discussion or claim of there being some sort of payment of alternative minimum tax on the 2001 amended return. As a conceptual matter, the alternative minimum tax calculation and the regular income tax calculation are not two separate taxes. They're two ways of arriving at the total income tax that is imposed under Subtitle A of the Internal Revenue Code. These are not two separate taxes. It's not an excise tax, an income tax. These are just two ways of arriving at the total income tax. The amended 2001 return makes this clear, and it's on page 152 of the record. That amended return shows that no tax was owed. All that happened was that the calculations for arriving at the total tax changed. And that's clear on page 152 again of the record at line 10. The total tax is the same. And then down toward the bottom of that page, amount you owe is listed as zero. The amount overpaid on the return is listed as zero. And there's no request for the zero overpayment to be applied to the next year. So there's no tax paid for 2001, and there's no overpayment to be applied to 2002. 7422D talks about when the crediting of an overpayment is considered to be a payment. Here there's no overpayment from 2001. That's clear from the face of the amended 2001 return. All they have is a nonrefundable credit to carry forward in future years. And nonrefundable credits are not payments of tax. That's the crux of it. Nonrefundable credits are not payments. He disagrees. What's the best case that sort of explains what you both are discussing? Well, Kingston Products and Republic Petroleum talk about, you know, when credits are considered to be overpayments. And they talk about the crediting of an overpayment to a determined tax liability. Here there's no overpayment. It's simply a credit that can be carried forward to future years. And if you think about how this entire scheme works, it makes sense that a nonrefundable credit is not considered to be a payment. And here's why. I could say 15 years ago I neglected to take the child tax credit on my tax return. And today I'm going to file an amended tax return, and I'm going to claim the child tax credit. And because I've now claimed a new credit, that's a payment. And because I've now made a payment, that qualifies under 6511A, and the government needs to refund my tax from 15 years ago. That's not how the scheme is set up. And there's no case, there's no authority, there's nothing in the Internal Revenue Code that supports this idea that a nonrefundable credit is a payment. So 7422 is inapplicable? It doesn't apply to nonrefundable credits? No, no, it does not. 7422, I'll get it right here so I have the exact language. 7422D says the credit of an overpayment of any tax in satisfaction of any tax liability, and then it goes on from here. Here we don't have an overpayment. There's no overpayment from 2001. There's no overpayment that was credited. There's no evidence that the IRS said, okay, well, you overpaid last year $5,000, going to apply it to this year. There's nothing like that in this case. And there's no credit of an overpayment in satisfaction of any tax liability. Here they claim that they overpaid their taxes, not that the IRS said we're going to take your overpayment from another year and help to satisfy your liability for this year. And if you're right, why doesn't that also resolve? Why do we reach attributable to and causation? If the AMT carry forward credit can't be an overpayment, isn't that a complete answer to the case? Or am I missing something? Well, Your Honor, their argument about 6511D I think is a little different. Okay. So they claim that because the foreign tax changes were part of the overall calculation of their tax liability, that somehow those tax changes caused the overpayment and therefore that their refund claim was timely. Caused what overpayment? I think I see your confusion. So there's a difference between when an overpayment or the crediting of an overpayment, which 7422D specifically talks about, is considered a payment for purposes of a refund claim and claiming that one has made an overpayment. I'll see if I can parse those for you because it's a little confusing. So on the facts of this case, which the government has accepted as true at this point, you know, we're at a motion to dismiss phase here, their documents show that they do have an overpayment for $2,205.1 million. And assuming these facts are true and they would have the burden of proof. Meaning once you re-computed, they just paid too much. That's correct. And you received the money, that's an overpayment. That's correct. Okay, I think I understand. The question is whether they filed a refund claim on time to get that overpayment back and that 6511 does not have any exceptions for the minimum tax credit. There's nothing in there that says, well, if your overpayment is caused by the minimum tax credit increase, then you get an extra amount of time. Here, the overpayment was caused by the minimum tax credit and doesn't qualify under D3. I think I've covered my key points. If the panel doesn't have any further questions, I'm happy to stop here. This is tough stuff for me. Electrolux, good law, not good law, relevant to this? And the other question is, could you speak a little bit about Dresser? Because in the brief you say Dresser is wrong. Those two cases. Electrolux, yes, remains good law. There's nothing in Woods that would call into question Electrolux. Again, Woods had to do with this. I know why Woods is different, but what's relevant about Electrolux to the government's argument? What's relevant? Electrolux provides additional support for how one looks at what causes an overpayment. Electrolux had to deal with this cascade-type argument, which isn't present here. The taxpayers haven't made it, and there's no need to reach it here. The court doesn't need to go as far as the court did in Electrolux. The same is true with the Trusted Media Brands case that we brought to the court's attention with the 28-J letter. Well, they did argue this was cascading. They said 905 instigated the recomputation, and the cascading consequence is we overpaid. The government's position is that those are two separate things. Electrolux is relevant because they contemplated a direct tie. Is it the word direct? If the court were to accept the argument that 905, the reporting required, somehow caused the overpayment, which the government thinks is incorrect, but if the court was to accept that, then the analysis that it was at the center of Electrolux would come into play, and the government's position is that it's the direct cause or the tax attribute that directly gives rise to the overpayment. And Dresser? Dresser is a confusing case. I will confess that. There's this statement in Dresser that credits are treated like a cash payment, and Dresser relies on Kingston Products for that statement, and it misreads Kingston Products. Kingston Products says something much narrower than every credit is treated as a cash payment. But that statement, which of course is not binding on this court, is dicta because the district court in that case concluded that there is not jurisdiction over the tax year at issue there because the tax court had already entertained a petition about that year. In addition, the taxes at issue in Dresser had actually been paid, as in the taxpayer paid the money to the IRS, within two years of the refund claim there. So under 6511A, the refund claim was timely. So why the district court got to that issue is puzzling. Why it made that statement is puzzling. But the statement is incorrect. Okay. Thank you very much. We'll now hear Mr. Welty's rebuttal. Your Honor, you asked the question whether the judge's position makes it impossible for the taxpayer to ultimately get a refund when the minimum tax credit is allowed. Essentially, yes, because what they're saying is you would have to file that refund claim within three years of that original return being filed. When you knew you were entitled to a refund. I'm saying we're entitled to a refund. No, you'd have to file it before you knew you were entitled to the refund. Exactly. And the only thing you could say is structurally the minimum tax credit represents a timing difference and at some point it's going to reverse and we're entitled to take it. I mean, conceptually, that's what the government is saying, which is antithetical to the unlimited carry forward of the minimum tax credit. You'd always have to file a placeholder kind of litigation every time you're in this bucket. Yes, which contrary to what the government says would not make a workable system. Has a court pointed out that incongruity or you think this is the first case? To my knowledge, this is the first time this issue has ever been addressed. Additionally, we're not talking about all tax credits. We're talking about the minimum tax credit here, which is fundamentally different because it represents an overpayment of ordinary income tax as a result of timing difference between Congress coordinated the alternative minimum tax and the ordinary tax. Alternative minimum tax isn't just an increased income tax. It is a backstop to these timing differences as used here in that timing or overpayment of ordinary income tax is computed, accounted for, carried forward in the minimum tax credit itself. That's just the net effect of the system. Interestingly, the government is very careful in its brief to describe the 2001 changes as a redistribution of tax between ordinary income tax and alternative minimum tax,  where Kingston went out of its way to say we are not talking about separate taxes and we're not talking about a payment that gave rise to a credit. Again, the general explanation for the Revenue Act of 1986, generally known as the Blue Book, says structure of minimum tax is an alternative system. For most purposes, the tax base for the new AMT is determined as though the alternative minimum tax were a separate and independent system. So the government says it's a redistribution between ordinary tax and alternative minimum tax in 2001. What it is is ordinary tax was overpaid, which triggered additional, when the foreign tax credits came in, you had to pay alternative minimum tax. And so it is an overpayment. There was an actual overpayment of that ordinary income tax in 2001. What happens is you carry it forward to 2002, and you have to see is it allowable. Is the increase in tax, ordinary income tax, such that it frees up room to take that overpayment of ordinary income tax attributable to the time differences? Under 7422, we believe that that, 7422 says that credit is deemed a payment when allowed. You have to do the computations to determine when it is allowed. Those computations are a direct result of these foreign tax credit redeterminations, which change the taxable mix. But when the statute says to the extent that the overpayment is attributed to the foreign tax credit, to the extent does suggest it wouldn't be the entire amount. Right. That's cap B. That's what? Under 6511D2. Yeah, that was nine-tenths of your brief, was that? Yes, yes. But you get back into the same question of... But you don't. Doesn't that defeat your argument that the entire amount was caused by the foreign tax credit? If the specific language of D says only to the extent that it's attributable, that implies that we have to segregate. That begs the question, what does attributable mean? Well, okay. That's where you get right back to the Woods argument, where historically there was a very narrow construction. Woods says, can you draw a direct line of causation? The Woods, the Woods, the Woods. All right. And on that note, we appreciate the excellent arguments from both counsel, and we will consider the case under submission. Thank you.